# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| J-LIFT, INC., A & R EQUIPMENT SALES, INC., WADE NEAL, KYLE MYERS, and DOUBLE EAGLE FORKLIFTS, LLC, § § § § § § Plaintiffs, § § v. § § RLI INSURANCE COMPANY, § INTERSTATE BATTERY SYSTEM § INTERNATIONAL, INC. and § POWERCARE AND SERVICE § SOLUTIONS, INC. § § Defendants. § | Civil Action No. |

## PLAINTIFFS' ORIGINAL COMPLAINT

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

Plaintiffs J-Lift, Inc., A & R Equipment Sales, Inc., Wade Neal, Kyle Myers, and Double Eagle Forklifts, LLC (collectively, "Plaintiffs") hereby file their Original Complaint against RLI Insurance Company ("RLI"), Interstate Battery System International, Inc. ("Interstate Batteries"), and PowerCare and Service Solutions, Inc. ("PowerCare"), and, for cause of action, would respectfully show the Court as follows:

### I. PARTIES

1. Plaintiff J-Lift, Inc. ("J-Lift") is a Nevada corporation with its principal place of business located in Reno, Nevada.

2. A & R Equipment Sales, Inc. ("A&R") is a Texas corporation with its principal place of business located in Anna, Texas.

3. Plaintiff Wade Neal is a resident and citizen of the State of Oregon

4. Plaintiff Kyle Myers is a resident and citizen of the State of Texas.

5. Plaintiff Double Eagle Forklifts, LLC ("Double Eagle") is an Arizona limited liability company with its principal place of business located in Chandler, Arizona.

6. Defendant RLI Insurance Company is an Illinois corporation with its principal place of business located at 9025 N. Lindbergh Dr., Peoria, Illinois 61615.

7. Defendant Interstate Battery System International, Inc. is a Texas corporation with its principal place of business located at 12770 Merit Dr., Suite 400, Dallas, Texas 75251.

8. Defendant PowerCare and Service Solutions, Inc. is a Texas corporation with its principal place of business located at 12770 Merit Dr., Suite 400, Dallas, Texas 75251.

## II. JURISDICTION & VENUE

9. The Court has subject-matter jurisdiction over Plaintiffs' federal claims under 28 U.S.C. § 1331, as such claims constitute "civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331; *see* 15 U.S.C. § 1125. The Court further has subject-matter jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367, as such claims "are so related to claims in the action

with [the Court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." *Id.* § 1367(a).

10. The Court has personal jurisdiction over Defendant RLI because it has sufficient minimum contacts with the State of Texas, as RLI routinely does business with Texas residents such that it should reasonably anticipate being haled into court in Texas, including issuing the insurance policy at issue in this action to Defendant Interstate Batteries, a Texas resident. Further, RLI has purposely submitted itself to the jurisdiction of this Court by filing the related case, styled *RLI Insurance Company v. Interstate Battery System International, Inc. et al.*, Case No. 3:20-01888, in the United States District Court for the Northern District of Texas. RLI has further purposely availed itself of the privileges of conducting activities in the State of Texas and has invoked the benefits and protection of the laws of the State of Texas.

11. The Court has personal jurisdiction over Defendant Interstate Batteries because Interstate Batteries is a Texas resident. Interstate Batteries has further purposely availed itself of the privileges of conducting activities in the State of Texas and has invoked the benefits and protection of the laws of the State of Texas.

12. The Court has personal jurisdiction over Defendant PowerCare because PowerCare is a Texas resident. PowerCare has further purposely availed itself of the privileges of conducting activities in the State of Texas and has invoked the benefits and protection of the laws of the State of Texas.

13. Venue is proper in this judicial district because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district. *See* 28

U.S.C. § 1391(b)(2). Alternatively, venue is proper in this judicial district because one or more Defendants reside in this district and are subject to the Court's personal jurisdiction. *See id.* § 1391(b)(3).

### III. STATEMENT OF THE CLAIM

14. The cost of maintaining forklifts and forklift batteries, which are quite large and weigh potentially thousands of pounds, is a major expense for many businesses and industries. Prior to the events giving rise to this suit, substantial demand existed in the national marketplace for improvements to on-site forklift battery maintenance and refurbishment services.

15. In 2016, Defendants Interstate Batteries and its affiliate PowerCare (collectively referred to herein as "PowerCare") represented to PowerFX, LLC ("PFX") that they owned the intellectual property to a device called the "Battery Medic," which PowerCare told PFX would refurbish forklift batteries on site, reducing the required downtime to refurbish a battery and allowing the process to take place overnight. PowerCare further represented to PFX that PowerCare had hired a full-time training staff to support the project and a system of cloud-based data monitoring and support for the Battery Medic project would be in place by July 2017. Incorporating its representations into a detailed business plan and profits projection, PowerCare induced PFX into a business relationship that would later expand to include Plaintiffs.

16. Based on PowerCare's representations, PFX entered a Master Services Agreement with PowerCare dated March 14, 2017 (the "MSA"). A true and correct copy of the MSA is attached to this Complaint as Exhibit A and incorporated herein

by reference. The MSA included a section titled "Third Party Use," in which PowerCare acknowledged and granted PFX the right to develop a "third party Material Handling Service Provider network" in North America, calling such parties "Service Providers." PowerCare pledged to "support [PFX's] development of a third-party Material Handling Service Provider network within North America and [to] provide [PFX] with any [PowerCare] qualification requirements and approved usage" for any Service Provider or their customers, as the ultimate users of the services. Plaintiffs are "Service Providers" as contemplated by PowerCare and PFX in the MSA.

17. Therefore, the PowerCare business plan and process contemplated by the MSA necessarily involved the use of third parties to market the Battery Medic product and related maintenance and refurbishment services to end users of forklift batteries (i.e., heavy industrial users and warehouses). Plaintiffs became involved in the Battery Medic project in 2016 and 2017 to perform that role for PFX and PowerCare.

18. Plaintiff Wade Neal became involved in the Battery Medic project in 2016, when he left his prior employer to devote his time to the project. Neal lost this income and incurred substantial costs in traveling the country, meeting potential customers, performing demonstrations of the Battery Medic product and services, and obtaining commitments from end users.

19. Plaintiff Kyle Myers became involved in the Battery Medic project in 2017, when he left his prior employer to devote his time to the project. Myers lost this income and incurred substantial costs in traveling the country, meeting potential

customers, performing demonstrations of the Battery Medic product and services, and obtaining commitments from end users.

20. Plaintiff J-Lift, Inc. became involved in the Battery Medic project in 2016, when J-Lift began to devote significant time and resources to developing the Battery Medic. J-Lift suffered losses to its business income and incurred substantial costs in traveling the country, meeting potential customers, performing demonstrations of the Battery Medic product and services, and obtaining commitments from end users.

21. Plaintiff A & R Equipment Sales, Inc. became involved in the Battery Medic project in 2016, when A&R began to devote significant time and resources to developing the Battery Medic. A&R suffered losses to its business income and incurred substantial costs in traveling the country, meeting potential customers, performing demonstrations of the Battery Medic product and services, and obtaining commitments from end users.

22. Plaintiff Double Eagle Forklifts, LLC became involved in the Battery Medic project in 2016, when Double Eagle began to devote significant time and resources to developing the Battery Medic. Double Eagle suffered losses to its business income and incurred substantial costs in traveling the country, meeting potential customers, performing demonstrations of the Battery Medic product and services, and obtaining commitments from end users.

23. Defendants Interstate Batteries and PowerCare made representations to Plaintiffs regarding the status and qualities of the Battery Medic project, including

that the Battery Medic would be a functioning, marketable product by July 2017 and that Battery Medic software had been installed and was working at retail shops or warehouses operated by Amazon and Ashley HomeStore. Those representations were false when made. Interstate Batteries and PowerCare further represented to Plaintiffs that they would provide a warranty equal to or greater than any existing warranty on a forklift battery, if the use of the Battery Medic would void the existing battery manufacturer's warranty, and would also provide that written commitment for Plaintiffs to provide to potential customers. Those representations were likewise false when made, and neither Interstate Batteries nor PowerCare ever provided this written statement or the promised warranty.

24. In reliance on these representations and the business plan prepared and promoted by Defendants Interstate Batteries and PowerCare, Plaintiffs left their prior employment and invested heavily in marketing the Battery Medic, entering various agreements with customers for the lease of Battery Medic units and foregoing other (existing) business opportunities.

25. Unfortunately, when the first batch of Battery Medic units was delivered to customers in the summer of 2017, they were immediately plagued by problems. While PowerCare had represented to Plaintiffs (and thus Plaintiffs represented to customers) that the delivered Battery Medic units would be functional and ready to use, in reality they required significant troubleshooting, diagnosing, and testing. Plaintiffs and their initial customers were essentially used as guinea pigs in an

attempted premature rollout of the Battery Medic by Interstate Batteries and PowerCare, with devastating results.

26. Because the Battery Medic was not market-ready, despite the prior representations by PowerCare, Plaintiffs were not able to deliver on their promises to customers, or secure the desired agreements with potential customers, and thus lost valuable time, expenses, and credibility in the industry. Multiple interested businesses refused to purchase Battery Medic products or services due solely to PowerCare's failure to provide a functioning product with adequate training and cloud-based support and/or failure to provide acceptable equivalent warranties to such customers, as promised.

27. In June 2018, PowerCare terminated the MSA with PFX, finally pulling the plug on the Battery Medic business plan that PowerCare has admitted (at least internally) was "fatally flawed" from the outset. In so doing, PowerCare left Plaintiffs without a product to market and unable to recoup the time and expense they had invested into the failed Battery Medic project. Plaintiffs would not have been damaged but for the misrepresentations made by PowerCare.

## IV. CAUSES OF ACTION

### A.   Lanham Act Claims Against Interstate Batteries and PowerCare

28.   The misrepresentations made by Defendants Interstate Batteries and PowerCare regarding the Battery Medic product and its platform of related services were untrue and/or misleading statements that constitute false advertising under the Lanham Act.  *See* 15 U.S.C. § 1125(a); *see also Eastman Chem. Co. v. Plastipure, Inc.*, 775 F.3d 230, 234 (5th Cir. 2014) ("Section 43(a) of the Lanham Act prohibits false advertising [and] provides a civil cause of action against any person who, in connection with goods or services, uses any 'false or misleading description of fact, or false or misleading representation of fact.'") (citing 15 U.S.C. § 1125(a)(1)).  Plaintiffs operate in the same industry as Interstate Batteries and PowerCare and are thus within the zone of interests protected by the Lanham Act.  The conduct of Interstate Batteries and PowerCare in violation of the Lanham Act proximately caused Plaintiffs injury.

29.   As discussed herein, Interstate Batteries and PowerCare made numerous statements regarding their offered goods and services.  Many of these statements, including that the Battery Medic product was functional, that Interstate Batteries and PowerCare would assume relevant manufacturers' warranties on refurbished batteries, and that a functional cloud-based data monitoring and support system existed, were simply (literally) false.  *See* 15 U.S.C. § 1125(c).  Others were misleading.  *See id.*  PowerCare made these statements in advertising and marketing efforts within the forklift industry and specifically to PFX and Plaintiffs herein.

30. The misstatements by Interstate Batteries and PowerCare actually deceived or had the tendency to deceive a substantial segment of their audience. Further, such deception was material in that it was likely to influence purchasing decisions made in the industry, and these misstatements by Interstate Batteries and PowerCare allowed for inadequate and falsely-represented goods and services to enter interstate commerce. Plaintiffs have been, and continue to be, injured as a result of the misrepresentations by Interstate Batteries and PowerCare, including by direct loss of sales and by damage to Plaintiffs' reputation and goodwill with the public in general and the forklift industry specifically.

### B. Negligent Misrepresentation Claims Against Interstate Batteries and PowerCare

31. The representations made by Defendants Interstate Batteries and PowerCare discussed herein implicated the pecuniary interests of Interstate Batteries and PowerCare and were made in the regular course of their business, as Interstate Batteries and PowerCare stood to gain from actions taken by Plaintiffs to advance the Battery Medic project.

32. Interstate Batteries and PowerCare misstated existing facts regarding the status and qualities of the Battery Medic product and related services in order to inform Plaintiffs regarding a business decision. In doing so, Interstate Batteries and PowerCare did not use reasonable care in obtaining or communicating the information or ascertaining the facts on which the information was based.

33. Plaintiffs actually and justifiably relied on the representations made by Interstate Batteries and PowerCare, including investing their time and efforts,

leaving their existing employment, and incurring expenses in support of the Battery Medic project. The representations made by Interstate Batteries and PowerCare therefore proximately caused Plaintiffs' damages.

## C. Fraud and Fraudulent Inducement Claims Against Interstate Batteries and PowerCare

34. Defendants Interstate Batteries and PowerCare represented to Plaintiffs that the Battery Medic and related support services would be functional and marketable by July 2017. These representations were material, as a functioning Battery Medic product and platform were foundational for pursuit of the business plan prepared and promoted by Interstate Batteries and PowerCare and would be the primary source of income for Plaintiffs in the future. Representations regarding the existence of a functioning Battery Medic product and platform were used by Interstate Batteries and PowerCare to induce Plaintiffs to invest time and expenses in marketing the Battery Medic product.

35. The representations that Interstate Batteries and PowerCare had a functional and marketable Battery Medic product and platform were false. Indeed, no such product has been marketed to this day.

36. Interstate Batteries and PowerCare knew that their representations were false when made. Alternatively, they made such representations recklessly, as positive assertions, without knowledge of their truth.

37. Interstate Batteries and PowerCare made these representations with the intent that Plaintiffs would act on them and knew that, if a functioning Battery Medic product and platform did not exist, Plaintiffs would not agree to market said product.

38. Plaintiffs justifiably relied on the representations made by Interstate Batteries and PowerCare, investing significant time and resources in marketing the Battery Medic product, and obtaining many agreements and conditional agreements with multiple customers—some of whom later refused to perform due to the failures of the Battery Medic product and services.

39. Plaintiffs' damages include, in part, the lost profits Plaintiffs would have realized had Interstate Batteries and PowerCare performed their obligations and fulfilled the promises concerning the Battery Medic. Plaintiffs would have been compensated with a portion of the profits earned from the sale/lease of each individual Battery Medic unit, as outlined in Interstate Batteries and PowerCare's own business plan and promotional materials.

40. Plaintiffs' damages further include the time and expense invested by Plaintiffs in the Battery Medic project, as well as lost business opportunities and lost earnings from prior employment.

### D. Breach of Contract Claims Against PowerCare

41. PowerCare and PFX are parties to the MSA, a valid and enforceable contract.

42. Plaintiffs are third-party beneficiaries of the MSA. The MSA explicitly contemplated the use of named "Service Providers" Specifically, under the MSA, PowerCare granted PFX "rights to develop a North American third party Material Handling Service Provider network" and promised to "support [PFX's] development of a third-party Material Handling Service Provider network within North America and

[to] provide [PFX] with any [PowerCare] qualification requirements and approved usage" for any Service Provider or their customers.

43.     The MSA thus fully and clearly states an intent to confer a direct benefit on Plaintiffs as Service Providers to enact the goals of the agreement.  Moreover, the business proposal and plan outlined by the MSA both required and specifically requested Service Providers be engaged to place Battery Medic units with interested customers and to carry the logistical load to make the business plan work.  PowerCare specifically agreed to certain obligations to Plaintiffs in the MSA.

44.     Plaintiffs performed their obligations under the MSA and its various Scopes of Work.  Plaintiff incurred substantial costs traveling the country, meeting potential customers, performing demonstrations of the Battery Medic product and services, and obtaining commitments from end users.  PowerCare did not provide the products, services, or support it agreed to provide in the MSA.  PowerCare thus materially breached the MSA, and such breaches proximately caused Plaintiffs' reliance and expectancy damages.

### E.  Texas Deceptive Trade Practices–Consumer Protection Act Claims Against Interstate Batteries and PowerCare

45.     Plaintiffs further are consumers of goods and services offered by Defendants Interstate Batteries and PowerCare under the Texas Deceptive Trade Practices–Consumer Protection Act (the "DTPA").  *See* Tex. Bus. & Com. Code §§ 17.41 *et seq*.  Plaintiffs are persons that sought and/or acquired the goods and services involved in the Battery Medic project from PowerCare by purchase or lease. *See id*. § 17.45(4).  Specifically, Plaintiffs sought functional Battery Medic units and

an existing platform of cloud-based data, support, maintenance, and refurbishment services, as PowerCare had outlined and agreed to provide in the MSA.

46.     Interstate Batteries and PowerCare committed wrongful acts against Plaintiffs prohibited by the DTPA. *See id.* § 17.50. Such violations include various acts or practices specified as false, misleading, or deceptive under the DTPA's "laundry list," including representing that goods or services have characteristics, uses, or benefits they do not have, representing that goods or services are of a particular standard, quality, or grade when they are not, and/or failing to disclose information about goods or services that was known at the time of the transaction, intending to induce the consumer into entering a transaction the consumer would not have entered if the information had been disclosed. *See id.* § 14.46(b).

47.     The actions of Interstate Batteries and PowerCare further rise to the level of unconscionable acts or practices that, to Plaintiffs' detriment, took advantage of Plaintiffs' lack of knowledge, ability, experience, or capacity to a grossly unfair degree.

48.     The acts and omissions of Interstate Batteries and PowerCare, as described herein, were a producing cause of Plaintiffs' damages.

49.     The conduct of Interstate Batteries and PowerCare described above was committed knowingly. Interstate Batteries and PowerCare were aware of the falsity, deception, and/or unfairness of the conduct about which Plaintiffs complain. Accordingly, Interstate Batteries and PowerCare are liable to Plaintiffs for additional

damages of up to three times the amount of economic damages, as permitted by the DTPA, as well as attorney's fees.

### F. Declaratory Judgment Claim Against RLI

50. Defendant RLI has filed a related case, styled *RLI Insurance Company v. Interstate Battery System International, Inc. et al.*, Case No. 3:20-01888, in the United States District Court for the Northern District of Texas. In that related case, RLI seeks a declaratory judgment holding that RLI has no duty to defend or indemnify Interstate Batteries or PowerCare in connection with the facts underlying this action, pursuant to the terms, conditions, limitations, and exclusions of the applicable RLI insurance policy. RLI argues that this is so because the damages claimed by PFX and Plaintiffs are based upon, arise out of, directly result from, or are a consequence of an actual or alleged obligation under or breach of a written or oral contract or agreement.

51. However, Plaintiffs' claims are not limited to breach of contract claims. Plaintiffs assert multiple claims based on material misrepresentations made to Plaintiffs and that these misrepresentations caused them damages outside of any contractual relationship between Plaintiffs and PowerCare. Indeed, certain duties that Plaintiffs allege PowerCare breached exist in the common law or under statutes, rather than being limited to a contract between the parties. *See, e.g.*, 15 U.S.C. § 1125(a). Finally, Plaintiffs allege that the misrepresentations of Interstate Batteries and PowerCare originated with (or were willfully ignored by) their respective senior management structures, and that the negligence of the Directors and Officers of

Interstate Batteries and PowerCare is directly responsible for the damages sustained by Plaintiffs herein.

52. Therefore, Plaintiffs seek a declaratory judgment holding: (1) the applicable insurance policy issued by RLI, covering Interstate Batteries and PowerCare, provides coverage for Plaintiffs' claims against Interstate Batteries and PowerCare as asserted herein; (2) Plaintiffs' losses stemming from such claims are not excluded by the policy; (3) Interstate Batteries and PowerCare are "entities" under the policy; and (4) Interstate Batteries and PowerCare are covered by the policy.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that, upon final hearing of this case, the Court enter judgment in favor of Plaintiffs and against Defendants RLI, Interstate Batteries, and PowerCare, making the declarations requested herein, awarding Plaintiffs all damages to which they show themselves entitled under applicable law, all attorney's fees and costs of this suit, and such other and further relief to which Plaintiffs may show themselves to be justly entitled.

|  | Respectfully submitted, |
|---|---|
| **THE FILLMORE LAW FIRM, L.L.P.** | **NOWAK & STAUCH, PLLC** |
| */s/ H. Dustin Fillmore, III* | */s/ Thomas R. Stauch* |
| H. Dustin Fillmore, III | Thomas R. Stauch |
| dusty@fillmorefirm.com | tstauch@ns-law.net |
| State Bar No. 06996010 | State Bar No. 00794687 |
| Charles W. Fillmore | H. Dustin Fillmore IV |
| chad@fillmorefirm.com | dfillmore@ns-law.net |
| State Bar No. 00785861 | State Bar No. 24105858 |
| 201 Main Street, Suite 801 | 10000 N. Central Expressway, Suite 1040 |
| Fort Worth, Texas 76102 | Dallas, Texas 75231 |
| Telephone: (817) 332-2351 | Telephone: (214) 832-2006 |
| Facsimile: (817) 870-1859 | Facsimile: (214) 823-2007 |

**ATTORNEYS FOR PLAINTIFFS J-LIFT, INC., A & R EQUIPMENT SALES, INC., WADE NEAL, KYLE MYERS, AND DOUBLE EAGLE FORKLIFTS, LLC**