IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| J-LIFT, INC., WADE NEAL, and KYLE MYERS, | § § § § § | |
| Plaintiffs, | | |
| v. | § § | Case No. 3:21-cv-00174-L |
| INTERSTATE BATTERY SYSTEM INTERNATIONAL, INC., and POWERCARE AND SERVICE SOLUTIONS, INC., | § § § § § § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiffs filed this lawsuit in federal court asserting claims for fraud, breach of contract, negligent misrepresentation, promissory estoppel, violations of the Lanham Act, and violations of the Texas Deceptive Trade Practices Act. Second Am. Compl. 22-31 (ECF No. 45). Defendants filed a Motion to Dismiss under Rule 12(b)(1) and for Judgment on the Pleadings (ECF No. 54) and a Motion to Dismiss Misjoined Parties or to Sever (ECF No. 56). The District Court referred these Motions to the United States Magistrate Judge under 28 U.S.C. § 636(b)(1)(B). *See* Ord. (ECF Nos. 57, 58). Having considered the Motions, the parties' arguments, and the applicable law, the magistrate judge recommends the Court grant Defendants' Motion to Dismiss under 12(b)(1) as to Plaintiffs Wade Neal and Kyle Myers and dismiss their claims without prejudice for lack of standing; grant

1

Defendants' Motion for Judgment on the Pleadings as to the remaining claims brought by Plaintiff J-Lift; and allow J-Lift to amend its complaint in the interest of justice. Finally, the Court should terminate as moot the Motion to Dismiss Misjoined parties or to Sever.

## Background

Plaintiffs J-Lift, Inc., Wade Neal, and Kyle Myers filed this lawsuit on January 26, 2021. *See generally* Compl. (ECF No. 1).[1] Subsequently, Plaintiffs have twice amended their complaint. *See* Am. Compl. (ECF No. 8); Sec. Am. Compl. (ECF No. 45). In their operative pleading, Plaintiffs assert claims against Defendants Interstate Battery System International, Inc., and PowerCare and Service Solutions, Inc., for violations of the Lanham Act, various forms of fraud, violations of the Texas Deceptive Trade Practices Act (DTPA), negligent misrepresentation, breach of contract, and promissory estoppel. Sec. Am. Compl. 22-31. Other than the Lanham Act claims, Plaintiffs assert all these causes of action under Texas state law. *Id.*

Plaintiffs allege that, beginning in 2016, Interstate Battery[2] encouraged the founding of PowerFX, LLC, an entity tasked with marketing and implementing an

---

[1] The parties stipulated to the dismissal of two original Plaintiffs, A&R Equipment Sales, Inc., and Double Eagle Forklifts, LLC. Stipulation of Dismissal (ECF No. 72).
[2] Plaintiffs claim that Defendant PowerCare and Defendant Interstate Battery "are one and the same corporate entity." Sec. Am. Compl. 2. Pursuant to this alleged relationship, the Second Amended Complaint only directs allegations to Interstate Battery, which it uses as "a collective term for Interstate [Battery] and/or

Interstate Battery product known as the Battery Medic. *Id.* at 4. The Battery Medic was "pitched as a revolutionary product that would completely disrupt the forklift battery industry." *Id.* Specifically, Plaintiffs allege that Interstate Battery promised that the Battery Medic "would refurbish forklift batteries on site, reducing the required downtime to refurbish a battery and allowing the process to take place overnight." *Id.*

According to Plaintiffs, Interstate Battery represented to PowerFX "that the Battery Medic would be a functional, marketable product by the second quarter of 2017, that initial units would be ready by April 1, 2017, after 'upgrades,' and that the supporting cloud database infrastructure would be ready by July 1, 2017." *Id.* at 5. Plaintiffs further allege that Interstate Battery then made a series of misrepresentations to PowerFX regarding "the functionality of the Battery Medic product, including the refurbishment services as well as the online data collection and monitoring functionality, marketing, sales, and business strategies, and the critical role of 'Service Providers' in effectively implementing and monetizing the strategy." *Id.* at 5-7. Through these misrepresentations, Plaintiffs claim that Interstate Battery "induced [PowerFX] into a business relationship that would later expand to include Plaintiffs as third-party service providers." *Id.* at 7. Moreover, Plaintiffs contend that Interstate Battery "knew and intended that

---

PowerCare." *Id.* The Court follows Plaintiffs' example and refers only to Interstate Battery when summarizing this case's background.

3

[PowerFX] would repeat its representations regarding the Battery Medic product when recruiting potential Service Providers like Plaintiffs." *Id.*

Plaintiffs assert that, because of these misrepresentations, they "became involved in the Battery Medic project in 2016 and 2017," and that they ultimately played a "vital marketing and promotion role for [PowerFX] and Interstate [Battery]." *Id.* at 8. As a result of their involvement, Plaintiffs claim that they were subjected to more misrepresentations—specifically, a promise "that the Battery Medic units were under production, that production was ramping up, and that Plaintiffs would have 200 units available for sale or lease by June 2017," and a promise "that Interstate would provide a warranty equal to or greater than any existing warranty on a forklift battery, if the use of the Battery Medic would void the existing battery manufacturer's warranty, and that Interstate would provide that commitment in writing for the Plaintiffs to provide to potential customers." *Id.* at 11-12. Plaintiffs further allege that these representations "were false when made and Interstate [Battery] was either aware of their falsity or made such representations recklessly and without regard for their truth or falsity." *Id.* Plaintiffs also claim that Interstate Battery "knew the Battery Medic was a failure but hid that knowledge from [PowerFX] and Plaintiffs." *Id.* at 14. Based on this conduct, Plaintiffs seek damages for loss of sales and opportunity, harm to reputation, lost profits, lost expenses invested into the Battery Medic project, statutory damages under the DTPA, and attorneys' fees. *Id.* at 23-32.

4

Defendants have filed two Motions to Dismiss the Second Amended Complaint. The First is Defendants' Motion to Dismiss under Rule 12(b)(1) and for Judgment on the Pleadings (ECF No. 54)—arguing that two of the Plaintiffs lack standing to sue and that none of the Plaintiffs can state a claim under the Lanham Act, which provides the sole basis for federal subject matter jurisdiction. The second is Defendants' Motion to Dismiss Misjoined Parties, or, alternatively, to Sever (ECF No. 56)—arguing that all the Plaintiffs other than J-Lift have been misjoined, and so their claims should be dismissed or severed. Both Motions are fully briefed and ripe for review.

**Legal Standards**

A motion to dismiss under Rule 12(b)(1) challenges a federal court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "If the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action." *Id.* 12(h)(3). "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (citation and internal quotation marks omitted). The Court "must presume that a suit lies outside [its] limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001) (citations omitted). The party asserting jurisdiction must allege the jurisdictional basis "affirmatively and distinctly"; it

5

cannot be "established argumentatively or by mere inference." *Ill. Cent. Gulf R.R. Co. v. Pargas, Inc.*, 706 F.2d 633, 636 (5th Cir. 1983) (citations omitted).

Additionally, a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Hebert Abstract v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990) (per curiam) (internal citations omitted). The standard for deciding a motion under Rule 12(c) is the same as the one for deciding a motion to dismiss under Rule 12(b)(6). *Gentilello v. Rege*, 627 F.3d 540, 543-44 (5th Cir. 2010).

When deciding a 12(b)(6) motion for failure to state a claim, a court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (citations and internal quotation marks omitted). To survive a Rule 12(c) motion for judgment on the pleadings, therefore, a plaintiff's complaint must contain sufficient factual matter to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "To be plausible, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555). This pleading standard does not require "detailed factual allegations," but it does demand more than an unadorned accusation devoid of factual support. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).

## Analysis

Defendants' Motions present a miscellany of arguments urging dismissal. The Court first considers Defendants' threshold challenge to Neal's and Myers's standing. The Court then considers Defendants' argument that J-Lift has failed to state a claim under the Lanham Act and finally turns to the matter of the Court's jurisdiction over J-Lift's remaining state law claims.

I. <u>Neal and Myers fail to present evidence demonstrating that they have standing, and so their claims must be dismissed without prejudice for lack of standing.</u>

Defendants argue that Neal and Myers do not have standing under Article III of the United States Constitution to assert their claims in federal court. Defs.' Mot. for J. 15-18 (ECF No. 54). Article III of the Constitution limits federal jurisdiction to actual "[c]ases" and "[c]ontroversies." U.S. Const. Art. III, § 2; *see also Deakins v. Monaghan*, 484 U.S. 193, 199 (1988). "Standing to sue is part of the common understanding of what it takes to make a justiciable case." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998) (citing *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)). Article III standing, therefore, "is a jurisdictional requirement"—in other words, when a plaintiff lacks standing, a federal court lacks subject matter jurisdiction over that plaintiff's claims. *Davis v.*

7

*Tarrant Cnty.*, 565 F.3d 214, 220 (5th Cir. 2009) (citing *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990)).

The "irreducible constitutional minimum of standing" includes three elements. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id.* (citations and internal quotation marks omitted). Second, the injury must be causally connected to the complained-of conduct; in other words, it must be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." *Id.* (alterations in original) (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976)). And third, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Id.* at 561 (quoting *Simon*, 426 U.S. at 38, 43).

"Generally, courts refuse to recognize standing based on economic harm that is merely a consequence of an injury suffered by another party." *Garzes v. Lopez*, 281 F. App'x 323, 325 (5th Cir. 2008). Therefore, "a partner, employee, shareholder, or officer does not have standing to sue on his own behalf when the only alleged injury was to the partnership or corporation and not to himself personally." *Heston Emergency Hous., L.P. v. Tex. Dep't of Hous. & Cmty. Affairs*, 2012 WL 896419, at *3 (S.D. Tex. Mar. 15, 2012) (citations omitted). Likewise, an independent contractor does not have standing when his alleged harms are

8

"merely incidental to the direct injury inflicted on [his principal]." *Duran v. City of Corpus Christi*, 240 F. App'x 639, 642 (5th Cir. 2007) (citing *Pagan v. Calderon*, 448 F.3d 16, 30 (1st Cir. 2006)).

In this case, Defendants assert that Neal and Myers lack the first element of Article III standing—a concrete and particularized injury. Defs.' Mot. for J. 15-18. Defendants argue that Neal and Myers have not suffered any concrete injuries because their claims only "seek[] to vindicate economic harm that is merely a consequence of injuries allegedly suffered by other parties: J-Lift and PowerFX." *Id.* at 16. Specifically, Defendants contend that Neal's alleged injuries are all derivative of J-Lift's alleged injuries because "at all relevant times, Neal was part of and worked for J-Lift," and that Myers's alleged injuries are all derivative of PowerFX's alleged injuries because PowerFX served as Myers's principal. *Id.* at 16-17. While Defendants clarify that they are not asserting that Neal and Myers were employees of J-Lift and PowerFX, they are asserting that an agency relationship existed between Neal and J-Lift and Myers and PowerFX, making Neal and Myers at least independent contractors of their respective companies. Defs.' Reply 3-5 (ECF No. 70). Defendants thus argue that because Neal's injuries are no more than incidental to J-Lift's injuries, and Myers's injuries are no more than incidental to PowerFX's injuries, Neal and Myers lack standing and the Court lacks subject matter jurisdiction to adjudicate their claims.

The Fifth Circuit recognizes two types of challenges to a federal court's subject matter jurisdiction—"facial" attacks, which are based solely on the

9

pleadings, and "factual" attacks, which are based on affidavits, testimony, and other evidentiary material. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981); *see also Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam) ("Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."). A party can make a factual attack on subject matter jurisdiction by submitting evidence, such as affidavits or testimony. *See Paterson*, 644 F.2d at 523; *see also IBEW-NECA Sw. Health & Benefit Fund v. Winstel*, 2006 WL 954010, at *1 (N.D. Tex. Apr. 12, 2006) (Fitzwater, J.) (citing *Paterson*, 644 F.2d at 523). If the movant provides evidence factually attacking subject matter jurisdiction, the nonmovant is "required to put forth evidence" establishing under a preponderance standard that the court has jurisdiction. *See Cell Sci. Sys. Corp. v. La. Health Serv.*, 804 F. App'x 260, 264 (5th Cir. 2020).

Defendants, initiating a factual attack on Neal's and Myers's standing, provide evidence that illustrates the relationships between Neal and J-Lift and Myers and PowerFX. Relating to Neal, Defendants produce an email from a PowerFX representative, a PowerCare customer list, and an email from a representative of Defendants all of which characterize Neal as working for J-Lift. *See* Def.'s App'x 3-7 (ECF No. 55-1). Indeed, each of these communications directs shipments to J-Lift, with attention to Wade Neal, thereby indicating that Neal was

serving as an agent of J-Lift. *Id.* Similarly, Defendants produce evidence that Myers maintained a PowerFX email address, sought clarification from PowerFX regarding his "future with [PowerFX]," repeatedly sought reimbursement of expenses from PowerFX, and engaged in extended email conversations regarding PowerFX business strategy. *Id.* at 8-21. Taken together, this evidence indicates that Neal was serving at least as an independent contractor for J-Lift and that Myers was serving at least as an independent contractor for PowerFX.

Neal and Myers respond by complaining that Defendants have "essentially filed a motion for summary judgment under another name without allowing any discovery to take place." Pls.' Resp. 7 (ECF No. 67). They then proceed to cite a litany of federal authority stating that a motion to dismiss under Rule 12(b)(6) must be decided entirely on the pleadings, or else converted to a motion for summary judgment under Rule 56. *Id.* These arguments, and this authority, are inapposite to the inquiry at hand. Defendants are making a factual attack on Neal's and Myer's standing under Rule 12(b)(1). And, as noted above, such an attack must be supported by evidence, and "may occur at any stage of the proceedings." *Cell Sci. Sys.*, 804 F. App'x at 263 (citing *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)). Accordingly, because Defendants have produced evidence indicating that Neal and Myers have not suffered any individual injury, Neal and Myers are required to provide evidence establishing that they have suffered an injury and therefore have standing to sue.

However, Neal and Myers have failed to produce any evidence indicating that they have standing to sue. Their initial response to Defendants' evidence is the bald claim that Defendants have failed to prove that an employment relationship existed between Neal and J-Lift and Myers and PowerFX. Here, Neal and Myers apparently misunderstand the burden relating to standing. Because Defendants produced evidence indicating that Neal's and Myers's alleged injuries are derivative of J-Lift's and PowerFX's injuries, it is Neal's and Myers's burden to show—by a preponderance of the evidence—that their injuries were not derivative. *See Cell Sci. Sys.*, 804 F. App'x at 263. By failing to produce any evidence indicating that they have standing, Neal and Myers have failed to meet their burden.

In addition, based on Defendants' evidence, Neal's and Myers's alleged injuries appear to be "merely incidental to the direct injur[ies] inflicted on [J-Lift and PowerFX]." *Duran*, 240 F. App'x at 642. For example, Neal asserts that his individual injury stems from the fact that "he left his prior employment to pursue the Battery Medic project . . . and thus lost existing income and incurred substantial costs on an individual basis." Pls.' Resp. at 9. Similarly, Myers asserts that he suffered an individual injury "by leaving his prior employer and losing that income and incurring substantial costs traveling the country as a Service Provider in support of Interstate's Battery Medic project." *Id.* at 10. Such allegedly "independent" injuries—the costs associated with selling Defendants' product and the loss of other career opportunities—are merely the result of the alleged injuries inflicted on J-Lift and PowerFX and would be true of anyone employed by either

of those companies. *See, e.g.*, *Duran*, 240 F. App'x at 642 (holding that an independent contractor's loss of future fee payments based on a principal's failure to receive a contract renewal was "at best" a derivative injury); *see also Harp v. Destefano*, 2007 WL 2869831, at *5 (D. Conn. Sept. 27, 2007) (holding that a shareholder's lost income is a purely derivative injury).

Moreover, while both Neal and Myers claim that they were independently injured because they each stood to earn benefits under Defendants' service agreement separate from those afforded to J-Lift and PowerFX, *Id.* at 9-10, they fail to produce any evidence—not even an affidavit asserting as much—indicating that they really stood to reap any such benefits under the service agreement.

Accordingly, because Neal and Myers have failed to present any evidence demonstrating that they have standing to bring this lawsuit in federal court, the Court should dismiss all their claims without prejudice for want of subject matter jurisdiction.

II. <u>Because J-Lift fails to demonstrate that it is anything more than a business consumer of Defendants' products, it has not properly stated a claim under the Lanham Act. And because J-Lift has had three chances to properly plead its Lanham Act claim, it should be dismissed with prejudice.</u>

J-Lift alleges the Court has subject matter jurisdiction over its Lanham Act claim under 28 U.S.C. § 1331 (federal question jurisdiction), and that it has supplemental jurisdiction over J-Lift's state law claims under 28 U.S.C. §1367(a). Sec. Am. Compl. 2-3. As Defendants note, J-Lift's Lanham Act claim is this Court's only basis for exercising subject matter jurisdiction over this case. Defs.' Mot. for

13

J. 6. Therefore, because dismissing the Lanham Act claim would strip J-Lift of its only asserted basis for subject matter jurisdiction, the Court first considers Defendants' argument, under Rule 12(c), that J-Lift has failed to state a claim under the Lanham Act.

Defendants contend that J-Lift has failed to state a claim under the Lanham Act because the Second Amended Complaint reveals that J-Lift is a consumer of Defendants' products rather than Defendants' competitor, and because J-Lift has failed to properly plead that any of Defendants' allegedly false communications qualify as "advertisements" under the Lanham Act. *Id.* at 19-20. J-Lift responds by denying that the Second Amended Complaint demonstrates that it is a consumer of Defendants' products, by asserting that it does not need to demonstrate that it operates as a direct competitor of Defendants, and by claiming that the Second Amended Complaint successfully pleads several "advertisements" under the Lanham Act. Pls.' Resp. 13-16.

As an initial matter, J-Lift is correct that a claim for false advertising under the Lanham Act is not limited to the alleged false advertiser's "direct competitors." *Lexmark Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 136 (2014). To state a claim for false advertising under the Lanham Act, a plaintiff must demonstrate that his "interests fall within the zone of interests protected by the law invoked." *Id.* at 129. To make such a demonstration, "a plaintiff must plead . . . an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations." *Id.* at 140. However, even though

14

"consumers also benefit from the [Lanham] Act's proper enforcement, the cause of action is for competitors, not consumers." *POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 107 (2014). Critically, "[e]ven a business misled by a supplier into purchasing an inferior product is, like consumers generally, not under the [Lanham] Act's aegis." *Lexmark*, 572 U.S. at 132.

In this case, the Second Amended Complaint makes it clear that J-Lift is, at most, a "business[] misled by a supplier into purchasing an inferior product." *Id.* Indeed, in their live pleading, J-Lift avers that it was a "service provider," recruited "to promote and sell Battery Medic services to consumers and, thereafter, to provide customer services and support for those consumers." Sec. Am. Compl. 7-8. J-Lift allegedly "acquired the goods and services involved in the Battery Medic project from [Defendants] by purchase or lease" and then resold those goods "to forklift owners around the country." *Id.* at 22-23, 27. At bottom, then, J-Lift alleges that it purchased or leased an inferior product—the Battery Medic and its related services—from its supplier—Defendants—in order to sell that product to end-use consumers. J-Lift is thus a business consumer of the Battery Medic. And even though J-Lift need not demonstrate that it is in "direct competition" with Defendants, it must demonstrate that its interest in this case is more than that of a consumer. But those in J-Lift's alleged situation—businesses or individuals duped by a supplier into purchasing inferior goods—do not fall "under the [Lanham] Act's aegis." *Lexmark*, 572 U.S. at 132. Accordingly, the Court should

15

find that J-Lift has failed to state a claim for false advertisement under the Lanham Act.

In addition, in cases such as this, dismissal with prejudice is appropriate if a court finds that the plaintiff has alleged its best case. *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999) (per curiam); *see also Arkansas v. Wilmington Tr. N.A.*, 2020 WL 1249570, at *12 (N.D. Tex. Mar. 16, 2020) (Lindsay, J.) (citing *Reliance Ins. Co. v. La. Land & Expl. Co.*, 110 F.3d 253, 258 (5th Cir. 1997) (noting "judges have the power to control their dockets by refusing to give ineffective litigants a second chance to develop their case" (citing *Turnage v. Gen. Elec. Co.*, 953 F.2d 206, 208-09 (5th Cir. 1992)))).

The Court has allowed J-Lift to amend its complaint twice. J-Lift has thus had every opportunity to address this deficiency but has failed to do so. Accordingly, with respect to its Lanham Act claim, J-Lift has demonstrated itself to be an "ineffective litigant[]" and the Court should refuse to give it "[yet another] chance to develop" its fatally flawed Lanham Act claim. *Reliance*, 110 F.3d at 258 (citing *Turnage*, 953 F.2d at 208-09).

Having determined that J-Lift has not stated a false advertising claim under the Lanham Act, the Court pretermits consideration of Defendants' argument that J-Lift fails to properly allege that Defendants' allegedly false communications were advertisements under the Lanham Act.

> III. <u>Having dismissed J-Lift's only federal claim, the Court should decline to exercise supplemental jurisdiction over the remaining state law claims. But the Court should allow J-Lift to file an amended complaint so the Court can determine whether it has original jurisdiction over the remaining claims.</u>

In the Second Amended Complaint, Plaintiffs assert that the Court has federal question jurisdiction over their federal claims, and supplemental jurisdiction over their state law claims. After dismissing all Neal's and Myers's claims and J-Lift's Lanham Act claim, the only remaining claims are J-Lift's Texas state law claims for fraud, violation of the DTPA, negligent misrepresentation, breach of contract, and promissory estoppel. There is thus no longer a basis for federal question jurisdiction over this lawsuit. Accordingly, the Court now determines whether it should still exercise supplemental jurisdiction over J-Lift's remaining state law claims.

In the Fifth Circuit, "[t]he general rule is that a court should decline to exercise jurisdiction over remaining state-law claims when all the federal law claims are eliminated before trial." *Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.*, 554 F.3d 595, 602 (5th Cir. 2009) (citing *Batiste v. Island Recs. Inc.*, 179 F.3d 217, 227 (5th Cir. 1999)); *see also Parker & Parsley Petroleum Co. v. Dresser*, 972 F.2d 580, 585 (5th Cir. 1992) ("Our general rule is to dismiss state claims when the federal claims to which they are pendent are dismissed." (citing *Wong v. Stripling*, 881 F.2d 200, 204 (5th Cir. 1989))). Further, when the federal claims are dismissed at an early stage of the litigation, the district court has a "powerful reason to choose not to continue to exercise jurisdiction." *Enochs v.*

17

*Lampasas Cnty.*, 641 F.3d 155, 161 (5th Cir. 2011) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 351 (1988)).

This case is still at an early stage. Discovery will not close until February 3, 2023, motions for summary judgment will not be due until February 17, and trial is set to begin on the District Court's four-week docket beginning in August 2023. First Am. Sched. Ord. (ECF No. 75). Accordingly, the Court should decline to exercise its supplemental jurisdiction over Plaintiffs' remaining state law claims and dismiss those claims without prejudice.

But this does not end the inquiry, because J-Lift, the only remaining Plaintiff, appears to be diverse from Defendants, the Court may be able to exercise original jurisdiction based on diversity. Federal district courts have original subject matter jurisdiction over civil actions where the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of different states. 28 U.S.C. § 1332(a). Because federal courts are courts of limited jurisdiction, there is a presumption against jurisdiction and the party asserting diversity jurisdiction has the burden of proof on that issue. *Stafford v. Mobil Oil Corp.*, 945 F.2d 803, 804 (5th Cir. 1991). Here, the Second Amended Complaint does not allege that this Court has diversity jurisdiction. Sec. Am. Compl. 2-4. Nor does J-Lift's operative pleading specifically allege that the amount in controversy exceeds $75,000. *See generally* Sec. Am. Compl. Thus, J-Lift has failed to make the requisite showing for diversity jurisdiction.

However, in the interest of justice, the Court should allow J-Lift to file an amended complaint in order to determine whether the court may exercise original jurisdiction over the remaining dispute between J-Lift and Defendants. Before all the individual Plaintiffs were dismissed, the case did not have complete diversity and Plaintiffs had little incentive to specifically plead the amount in controversy. Allowing J-Lift one final opportunity to amend will give J-Lift a fair opportunity to allege the amount in controversy and will likely solve some of Defendants' legitimate concerns regarding group pleading in the Second Amended Complaint. Accordingly, the Court should decline to exercise supplemental jurisdiction over J-Lift's remaining state law claims but allow J-Lift to replead in order to determine if the Court may exercise original diversity jurisdiction over J-Lift's remaining claims.

## Recommendation

For the reasons stated, the Court should grant Defendants' Motion to Dismiss under 12(b)(1) (ECF No. 54) as to Neal and Myers and dismiss their claims without prejudice for lack of standing; grant Defendants' Motion for Judgment on the Pleadings as to the remaining claims brought by Plaintiff J-Lift but allow J-Lift to amend its complaint in the interest of justice; and terminate as moot the Motion to Dismiss Misjoined parties or to Sever (ECF No. 56).

**SO RECOMMENDED.**

July 29, 2022.

REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).